[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action by the plaintiff wife against the defendant husband for a dissolution of the marriage, alimony, custody of the minor child, child support, equitable distribution of the parties' CT Page 12510-J assets, transfer of the marital home at 54 Twin Brook Terrace, Monroe, Connecticut, and attorney's fees. The parties were married on April 28, 1984 in Inman, South Carolina. They have resided continuously in Connecticut for at least one year next prior to the filing of the complaint. There is one minor child, Kayla M. Harris, born June 10, 1989. There are no other minor children of the marriage. Neither party has been the recipient of public assistance.
The plaintiff has a child from a prior relationship, Nicole Staggs born August 10, 1977. The defendant has two other minor children, Shanna Grace Harris born September 11, 1985, and Calvin Harris, Jr. born January 28, 1989.
From the beginning of the marriage, the plaintiff's daughter Nicola lived with the couple. However, she and the defendant did not get along and eventually it became clear to the plaintiff that the marriage would be in grave trouble if the child continued to live with her and the defendant. Consequently, she sent the child back to her parents in South Carolina.
The defendant, in the meantime, had had two children by another woman while he was still married to the plaintiff. While the births of these children did not result in the plaintiff's immediately filing for divorce or leaving the defendant, she was not happy about the situation and resented the time he spent with the other children, claiming that he gave little or no time to their child unless it was with the other two children. However, she continued to maintain the marriage until the defendant sought sole custody of his other two children with the intention of bringing them to live in the marital home. This was more than the plaintiff could take and was the basis for the irretrievable breakdown of the marriage which she claimed and which the court so finds.
Because it is the defendant's conduct which precipitated the breakdown of the marriage, the court finds that he is at fault and that fault will be considered in determining the financial orders.
FINANCES
Both parties have been employed throughout the marriage, with the plaintiff at the present time earning $571.50 gross with a net of $453.93. The defendant, on the other hand, has been self-employed throughout the marriage as a master electrician. He CT Page 12510-K has a bachelor's degree from the University of New Haven while the plaintiff has an associate's degree. The defendant earned large sums of money in the `80's and the early `90's and accumulated savings of over $100,000 in 1990. However, in the last two or three years, his reported earnings have decreased and somewhat drastically while this case has been pending.
The defendant appears to have made almost no effort either to seek employment under another contractor at the $20.00 an hour wage which is the normal pay of a master electrician or otherwise. He has not sought other customers either. Instead, he has worked at jobs which were, in effect, presented to him or referred to him by a friend or by another person for whom he had previously worked. The court did not believe from the testimony of the defendant that he had expended more than a minimal effort in seeking additional customers in building his own business or in seeking positions with other contractors. Consequently, the court finds that the amount which the plaintiff claims as his earnings do not represent his earning capacity. The court also finds that his expenses would indicate a much larger income than he reports, either in his income tax or in his affidavit.
Consequently, the court finds that the most accurate measure of his earning capacity is the hourly wage of a master electrician of $20.00 an hour times a forty hour work week or $800. Deducting from that the percentage he assigned to his FICA and Medicare and an estimate of .0875 as the federal income tax deduction which totals $70 (a total of $120.72) or $679.28. The court finds this to be his net earning capacity.
The plaintiff's earnings are set forth in her affidavit and her net is $453.93.
For purposes of child support, the defendant is entitled to a deduction for child care or support for his other two children which amounts to $150 a week. This would mean that the defendant's net income less the child support equals $529.28. The plaintiff's net income, as stated above, is $453.93. The total of both incomes is $983.21. Of that amount, the husband's share is .5383 and the wife's .4617. The child support guidelines posit $217 as the appropriate amount for one child with the combined incomes of $983.21. On this basis, the husband's support order is $116.81.
While this order would not leave the plaintiff with CT Page 12510-L sufficient funds to meet her expenses as she sets them forth in her affidavit, it does leave her with more net income than the defendant. Therefore, there appears to be no basis for ordering more than $1.00 a year alimony which can be modified in the future if she can prove that the defendant is earning more than the earning capacity the court has posited. It is apparent, however, that unless she has some other source of income it will not be possible for the plaintiff to maintain the house, and the only feasible course would seem to be to sell it.
The history of the acquisition of the house has been delineated in the defendant's memorandum in an attempt to persuade the court that the disposition of the marital property should depend solely on who gave what to its initial acquisition and upkeep. However, while the plaintiff did not contribute financially to the original acquisition nor to the payment of the mortgage, she did contribute to the economic part of the marriage both by her using her income for her needs and by taking care of the child and of the house. For a time, she also kept her husband's records on his business which was conducted entirely out of his home.
The court, therefore, finds that the plaintiff's contribution to the marital estate was at least fifty (50%) per cent. However, that is not the only basis upon which the disposition of that property will be made.
Other factors which the court considered are set forth in §§ 46b-81 and 46b-82 of the General Statutes.
In addition to the foregoing, the court makes the following findings and orders.
1. The marriage of the parties has broken down irretrievably and it is hereby dissolved.
2. The defendant is at fault for the breakdown of the marriage.
3. The parties have stipulated on the issue of custody and visitation, and the stipulation is entered as an order of the court and is appended hereto and made a part of this decision and of the court's judgment. It provides for joint custody of Kayla and a detailed agreement on visitation.
4. The defendant shall pay to the plaintiff $116.81 in CT Page 12510-M accordance with the Child Support Guidelines and as detailed above.
5. The defendant shall pay the defendant $1.00 a year alimony as detailed above.
6. In view of the fact that the plaintiff would be unable to maintain the house with her income and the support order, the court orders the house to be sold.
 (a) To accomplish the sale of the house, the parties shall agree on a real estate broker. If they are unable to agree within one (1) week from the date hereof, each shall pick a broker and the two brokers selected shall choose a third. The third shall be retained by the parties as the exclusive broker for the sale of the house for a minimum of six (6) months. He or she shall also determine the asking price and the eventual sale price. The net proceeds from the sale shall be defined as the sale price less closing costs, attorney's fees and sales commission. The net proceeds shall then divided as follows: sixty (60%) percent to the plaintiff and forty (40%) percent to the defendant.
 (b) Pending the sale, the plaintiff may remain in the house with her daughter. However, she shall be responsible for sixty (60%) percent of the mortgage and taxes and general maintenance and one hundred (100%) of the utilities. The defendant shall be responsible for forty (40%) of the mortgage and taxes and of the general maintenance.
7. The defendant shall convey to the plaintiff a one-half interest in all of his IRA accounts listed on his affidavit and which amount to $9,261.51. Any penalty and/or tax owed as a result of this transfer shall be shared equally by the parties.
8. The plaintiff shall maintain medical, dental, and other health and accident insurance for the benefit of the minor child for so long as it is available to her through her employment. Any unreimbursed medical expenses of the minor shall be shared equally by the parties. CT Page 12510-N
9. Each party shall retain the automobile he or she is presently using and shall be responsible for any liability and/or maintenance of same.
10. All of the furniture in the marital home shall be the property of the plaintiff except that the defendant may remove any personal items including any items used in the pursuit of his business.
11. Each party shall be responsible for the liabilities as listed on his or her affidavit except as otherwise ordered.
12. The defendant shall provide life insurance for the benefit of the plaintiff and the minor child in the amount of $50,000 naming the wife and child as irrevocable beneficiaries for so long as he has an obligation to provide either alimony or child support for one of them. He may be excused from this obligation upon proof of his being uninsurable.
13. The attorney's fees of the child's attorney, Daiga Osis, are approved as reasonable and each party is liable for one-half of those fees, which should be paid within sixty (60) days following the date of this judgment.
Each party shall pay his or her own attorney's fees.
It is so ordered.
MARGARET C. DRISCOLL STATE TRIAL REFEREE